1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DANIEL CARRANZA,                                  No.  2:21-cv-0304 TLN KJN P

12                        Petitioner,

13            v.                                          FINDINGS & RECOMMENDATIONS

14    JEFF LYNCH,

15                        Respondent.

16

17    I.  Introduction

18            Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his June 2017 conviction for

20    attempted premeditated murder and assault with a deadly weapon.  Petitioner was sentenced to 11

21    years to life in state prison.  Petitioner claims that the trial court violated his Fourteenth

22    Amendment due process rights by admitting inadmissible evidence of his gang membership.

23    After careful review of the record, this court concludes that the petition should be denied.

24    II.  Procedural History

25            Petitioner was charged with attempted premeditated murder (California Penal Code

26    §§ 187, subd. (a) & 664, subd.(a)) and assault with a deadly weapon (California Penal Code

27    § 245, subd. (a)(1)).  (ECF No. 12-3 at 8-10.)  For the attempted murder charge, petitioner was

28    alleged to have used a knife.  (Id.)  For both charges, petitioner was alleged to have personally

1

inflicted great bodily injury and committed the crimes for the benefit of a criminal street gang. (Id.)  During the first trial, a jury convicted petitioner of assault with a deadly weapon and found true the great bodily injury enhancement.  (Id. at 213.)  The jury was unable to reach a verdict on the attempted murder charge and found the gang enhancement not true.  (Id.)  The trial court declared a mistrial as to the attempted murder charge.  Petitioner was retried on that charge. During his retrial, a second jury convicted petitioner of attempted murder and found as true the following enhancements: the attempt was willful, deliberate, and premeditated; petitioner personally used a knife; and petitioner personally inflicted great bodily injury.  (ECF No. 12-4 at 93-95.)  On August 1, 2017, petitioner was sentenced to 11 years to life in state prison.  (Id. at 99-101.)

Petitioner appealed the conviction to the California Court of Appeal, First Appellate District.  The Court of Appeal affirmed the conviction on November 6, 2019.  (ECF No. 12-9.)

Petitioner filed a petition for review in the California Supreme Court, which the court denied on February 11, 2020.  (Id.)

Petitioner filed the instant petition on January 3, 2021.  (ECF No. 1.)  Respondent filed an answer on May 25, 2021.  (ECF No. 12.)  Petitioner did not file a traverse.

III.  Facts[1]

After independently reviewing the record, this court finds the appellate court's summary accurate and adopts it herein.  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the First Appellate District provided the following factual summary:

> In November 2014, the victim, Ivan Fraire, worked at a factory in Vacaville. On the night of November 26, as Fraire worked at a machine press, he was stabbed from behind. He turned and saw the assailant, who was wearing a red shirt; he had previously seen the man two or three times at the factory. Indeed, Fraire had greeted his assailant while coming back from break about 30 minutes before the attack. Fraire was stabbed in the abdomen, chest, and arm before the attacker ran away. Fraire appeared to have lost at least 40 percent of

---

[1]  The facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. Carranza, No. A152211, 2019 WL 5867435 (Nov. 6, 2019), a copy of which was lodged by respondent as ECF No. 12-9.

his blood by the time he reached the hospital. His wounds were consistent with being stabbed by a large knife, and he would have died without medical attention.

Before being taken to the hospital, Fraire told his supervisor, his father (who also worked at the factory), and a police officer that his attacker was wearing a red shirt. He also told the officer the attacker was a Hispanic male co-worker. He told another officer at the hospital that the assailant was a Hispanic male with a shaved head wearing a red shirt. At trial, Fraire identified appellant as his attacker, although he had been unable to identify appellant in a photographic lineup while he was in the hospital. Fraire did on that occasion identify a photograph of appellant taken from Facebook as his attacker, but the photograph was one Fraire's mother showed him, not one of the photographs in the lineup.

On the night of the stabbing, other employees reported seeing appellant at work wearing a red or maroon 49er's sweatshirt or sweater, a red shirt or hoodie, and a red belt. On the night of the stabbing, appellant's supervisor saw appellant with a 12- to 15-inch knife—he described it as a machete. Appellant's job required him to cut cardboard, but he previously had done so with a folding knife with a three-inch blade. The supervisor had never seen the sort of long knife appellant had at the factory, and he told appellant to put the knife in his car.

On the evening of November 26, 2014, shortly after a meal break, appellant left his work station and walked towards the bathroom. At around 10:30 p.m., after appellant had been gone for between five and 20 minutes, his co-workers heard a commotion in the factory that turned out to be due to the stabbing. Appellant never returned to work and never punched out of work; he was the only employee unaccounted for.[3]

[N.3 During trial, appellant presented testimony from a factory employee who testified he saw a nervous-looking man who he did not recognize in the bathroom shortly before the stabbing. The man was wearing a blue jacket.]

On December 3, 2014, appellant received a text message from someone named "Jaky," who commented that she was "on the run." Appellant responded, "Yeah. Am on the run too. That's crazy." Jaky asked appellant why and appellant responded, "Some hot shit, feel me. I can't tok [sic] about, feel?" Appellant was arrested on December 10 during a traffic stop.

**<u>Gang Evidence</u>**

Gang expert Detective Erik Watts testified generally about Norteño and Sureño gangs, explaining their historical origins as prison gangs and their areas of geographic predominance. Members display gang pride through clothing and tattoos. Norteños wear red clothing, while Sureños wear blue.

The victim, Fraire, admitted he had been a member of a Vacaville

3

Sureño street gang (the "Brown Pride Sureños"), but he said he left the gang two years before the stabbing. The gang's color was blue, and the gang's enemies were the Norteños, who claimed the color red. Fraire had several gang tattoos, including the words "Brown" and "Pride," one on each hand. He also on his right hand had the tattoo "BPS," for Brown Pride Sureños, a tattoo of one dot next to three dots, which is also associated with the Sureños. Those tattoos were covered by gloves while he was operating machines in the factory, but not when he entered or left the factory, clocked in or out, during breaks, or when he went to the bathroom. On the night of the stabbing, Fraire was wearing a blue jumpsuit, a blue tank top, and blue shorts.

Detective Watts opined appellant was a member of a Vacaville Norteño criminal street gang called the Brown Street Locos. The testimony was based on appellant's admission to being a Norteño member during a traffic stop in 2011, appellant's red clothing and various tattoos, photographs on appellant's phone, and appellant's association with a person with a "Brown Street Locs" tattoo.

Detective Watts also testified about gang culture with respect to attacks between members of different gangs. Committing crimes is considered "putting in work" for the gang, and the more work a gang member puts in, the higher his status within the gang becomes. Attacking a rival gang member would be considered high status "work;" Watts commented, "you'll be more respected because you're fighting the enemy." Among other tattoos, appellant had the word "active" tattooed on his right hand; gang members used that word to indicate they were actively committing crimes to "climb the ranks" in the gang. Watts had investigated violent attacks between Norteño and Sureño gang members and just being a member of a rival gang was enough to provoke a violent attack. Brown Street Locos members regard all Sureños as their enemies.

(ECF No. 12-9 at 153-55.)

IV.   Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

4

court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2]

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be

1    Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v.

2    Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

3    the writ simply because that court concludes in its independent judgment that the relevant state-

4    court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

5    application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

6    550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

7    in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state

8    court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes

9    federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

10   court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v.

11   Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus

12   from a federal court, a state prisoner must show that the state court's ruling on the claim being

13   presented in federal court was so lacking in justification that there was an error well understood

14   and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at

15   103.

16        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17   court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

18   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

19   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

20   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

21   considering de novo the constitutional issues raised.").

22        The court looks to the last reasoned state court decision as the basis for the state court

23   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

24   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25   previous state court decision, this court may consider both decisions to ascertain the reasoning of

26

27   _____

     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28   384 F.3d 628, 638 (9th Cir. 2004)).

the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98.  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V. Petitioner's Claim

Petitioner asserts that the trial court abused its discretion by admitting evidence of petitioner's criminal street gang membership for three reasons. First, the prior bad acts were not sufficiently similar to the charged offense and constitutes inadmissible propensity evidence under Evidence Code § 1101. (ECF No. 1 at 20.) Second, the evidence was more prejudicial than probative under Evidence Code § 352. (Id.) Lastly, this evidence made his trial fundamentally unfair. (Id.)

In response, respondent argues that the state court reasonably concluded that the admission of gang evidence did not violate his due process rights. (ECF No. 12-1.)

In a well-reasoned opinion, the state appellate court rejected petitioner's claim on direct appeal.

> Appellant contends the trial court erred in admitting evidence that appellant and Fraire were current and former members of rival Norteño and Sureño gangs, and that rival gang members attack each other without provocation. The trial court did not abuse its discretion.
>
> Prior to the second trial, the prosecutor moved in limine to admit "evidence of [appellant's] gang membership and testimony of a gang expert regarding the sociology and psychology of gang behavior for purposes of establishing motive and intent." Appellant's counsel moved to exclude all gang-related evidence. The trial court ruled the prosecution would be permitted to use other gang-related evidence to prove motive and intent unless it was unduly prejudicial. The court excluded as unduly prejudicial evidence that appellant assaulted a Sureño gang member in juvenile hall. At trial the court instructed the jury pursuant to CALCRIM No. 375 that it could consider "evidence of behavior by the defendant involving gang activity ... for the limited purpose of deciding whether: [¶] The defendant acted with the intent to kill; or [¶] The defendant had a motive to commit the offenses alleged in this case. [¶] Do not consider this evidence for any other purpose. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime." The court also instructed the jury pursuant to CALCRIM No. 303 that, "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

8

Evidence Code section 1101, subdivision (a), provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (See also *People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) However, "this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt*, at p. 393.) That is because Evidence Code, section 1101, subdivision (b) permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident ...) other than his or her disposition to commit such an act." If evidence is relevant to prove a fact such as intent or motive, "the trial court then must consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] ... create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)' " [Citation.] 'Rulings made under [sections 1101 and 352] are reviewed for an abuse of discretion. [Citation.]' [Citation.] 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal ... is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1328–1329.)

"In general, '[t]he People are entitled to "introduce evidence of gang affiliation and activity where such evidence is relevant to an issue of motive or intent." [Citation.]' [Citation.] '[E]ven where gang membership is relevant,' however, 'because it may have a highly inflammatory impact on the jury trial courts should carefully scrutinize such evidence before admitting it.' [Citation.] On the other hand, ' "[b]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." ' " (*People v. McKinnon* (2011) 52 Cal.4th 610, 655.)

In the present case, the evidence that appellant had reason to attack the victim Fraire as a perceived rival gang member provided a motive for appellant to engage in the otherwise unprovoked, inexplicable assault.[4] Appellant's primary contention on appeal is that there was insufficient evidence that the attack had a nexus to appellant's gang membership to support an inference regarding his motive and intent. He argues, "there was virtually nothing about the circumstances of the assault ... that suggested it was gang-related." We disagree. Although the assailant did not "call[ ] out a gang name, display[ ] gang signs or otherwise state[ ] his gang affiliation" (*People v. Rios* (2013) 222 Cal.App.4th 542, 574),[5] the evidence showed the attacker was thoroughly dressed in red, while Fraire was thoroughly dressed in blue. The evidence also showed there was ample opportunity for a co-worker to have noticed Fraire's Sureño-associated tattoos on his hands. Although the jury in the first trial did not find the prosecution had proven the gang-relatedness of the

assault beyond a reasonable doubt, that did not obligate the trial court to conclude there was insufficient evidence to support admission of the gang evidence to show motive and intent for the attack. Indeed, the otherwise inexplicable nature of the attack increased the plausibility of the gang motive and decreased the quantum of evidence necessary to show a "direct logical nexus" (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15) between the gang evidence and the stabbing. (See *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1551 ["The law does not disfavor the admission of expert testimony that makes comprehensible and logical that which is otherwise inexplicable and incredible."].) The evidence of the gang rivalry was also relevant to showing intent to kill.

[N.4 The circumstance that Fraire was a *former* gang member is not significant given that his tattoos and clothing would have given a rival gang member reason believe he was still associated with the Sureños. (See *People v. Williams* (1997) 16 Cal.4th 153, 194 ["defendant's alleged motive to kill Crips was just as arguable on facts suggesting (as they did) that the victim was dressed *like* a Crip when he was shot, as it would have been on facts suggesting he actually *was* a Crip"].)]

[N.5 Respondent argues appellant effectively took credit for the stabbing by having the word "active" tattooed on his right hand shortly after the attack. We need not and do not address whether that provides additional support for the trial court's rulings.]

The present case is distinguishable from *People v. Albarran* (2007) 149 Cal.App.4th 214, 227. There, the defendant, an active gang member, and a companion shot at a house during a birthday party. (*Id.* at pp. 217, 220.) There was hearsay that members of a rival gang were at the party, although the house was owned by someone who belonged to a gang with no known rivalry with the shooters' gang. (*Id.* at p. 221.) The trial court granted a new trial on a gang enhancement allegation but denied a new trial on the underlying charges, apparently concluding the gang evidence was relevant to the defendant's motive. (*Id.* at pp. 222, 226.) The court of appeal concluded the trial court erred because "There is nothing inherent in the facts of the shooting to suggest any specific gang motive." (*Id.* at p. 227.) In the present case, the victim's tattoos and the rival colors worn by appellant and Fraire, as well as the general inexplicability of the unprovoked attack on a factory floor, presented a stronger case of relevance than that in *Albarran*.[6] The trial court did not abuse its discretion in concluding the gang evidence had a "tendency in reason to prove" (Evid. Code, § 210) appellant's motive and intent, and was therefore admissible under Evidence Code section 1101, subdivision (b). (See *People v. Williams*, *supra*, 16 Cal.4th at p. 193–194 [gang evidence relevant to show motive where the victim was wearing gang colors in an area claimed by rival gangs].)[7]

[N.6 Appellant suggests Fraire might have been attacked by a member of his former gang as retaliation for leaving the gang, but that is not a plausible alternate explanation. Fraire testified he was still friends with the members of his former gang, he left the gang two years before the stabbing, and Detective Watts testified a Sureño

1    gang member was not likely to wear red.]

2    [N.7 Appellant argues the evidence in the present case was
     insufficient to prove the stabbing was gang related within the
3    meaning of section 186.22, subdivision (b)(1). Most or all of the
     cases he cites appear to be distinguishable, but we need not reach that
4    issue because appellant has not shown that admission of evidence
     under Evidence Code section 1101, subdivision (b) requires the same
5    quantum of evidence to support a finding under the enhancement.]

6    Neither did the trial court abuse its discretion under Evidence Code
     section 352. Although the evidence that appellant was an active gang
7    member was inherently prejudicial, that was also the source of the
     probative value of the evidence in providing a motivation for
8    appellant to have engaged in the unprovoked attack. The court
     excluded evidence that appellant had previously assaulted a Sureño
9    gang member in juvenile hall, which would have been unduly
     prejudicial. None of the evidence admitted was "of such nature as to
10   inflame the emotions of the jury, motivating them to use the
     information, not to logically evaluate the point upon which it is
11   relevant, but to reward or punish one side because of the jurors'
     emotional reaction." (*People v. Scott* (2011) 52 Cal.4th 452, 491.)
12   The trial court's instructions decreased the risk the jury would
     consider the gang evidence for improper purposes. (*People v.
13   Waidla* (2000) 22 Cal.4th 690, 725.) The court did not abuse its
     discretion.[8]
14
15   [N.8 Because there were "permissible inferences the jury [could]
     draw from the [gang] evidence," admission of the evidence did not
16   violate appellant's federal constitutional right to due process. (*People
     v. Albarran*, *supra*, 149 Cal.App.4th at p. 229.)]

17   (ECF No. 12-9 at 156-60.)

18       Petitioner argues that the state court erred in admitting evidence of petitioner's gang

19   membership, even for the limited purpose of showing intent and motive, because it was

20   inadmissible under Evidence Code sections 1101 and 352.  This issue is a matter of state law and

21   is not cognizable on habeas review.  See Estelle, 502 U.S. at 67-68; Holley v. Yarborough, 568

22   F.3d 1091, 1101 (9th Cir. 2009); see also Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005).

23   Errors of state law do not warrant federal habeas relief.  See Estelle, 502 U.S. at 67-68; Johnson

24   v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995).  The erroneous admission of evidence is grounds for

25   federal habeas corpus relief only if it made the state proceedings so fundamentally unfair as to

26   violate due process.  See Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

27       Assuming the claim is cognizable, "[u]nder AEDPA, even clearly erroneous admissions of

28   evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

                                            11

1  corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

2  Court." Holley, 568 F.3d at 1101; see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir.

3  2021); Nava v. Diaz, No. 18-16165, 816 F. App'x 192, 193 (9th Cir. Aug. 12, 2020).  Because the

4  Supreme Court has not clearly decided whether the admission of irrelevant, unduly prejudicial, or

5  propensity evidence constitutes a due process violation sufficient to warrant habeas relief, Holley,

6  568 F.3d at 1101, this court cannot conclude that the state court's ruling was contrary to, or an

7  unreasonable application of, clearly established federal law.  See generally, Wright v. Van Patten,

8  552 U.S. 120, 126 (2008) (per curiam); Jennings v. Runnels, 493 F. App'x 903, 906 (9th Cir.

9  Sept. 24, 2012); Bradford v. Paramo, No. 2:17-cv-05756 JAK JC, 2020 WL 7633915, at *6-7

10  (C.D. Cal. Nov. 12, 2020) (citing cases).

11           Petitioner's argument fares no better on the merits.  Admission of evidence violates due

12  process only if the jury could draw no permissible inferences from the evidence.  Jammal, 926

13  F.2d at 920 ("Even then, the evidence must 'be of such quality as necessarily prevents a fair

14  trial.'")  Here, the state court found that "the evidence that [petitioner] had reason to attack the

15  victim Fraire as a perceived gang member provided a motive for appellant to engage in the

16  otherwise unprovoked, inexplicable assault."  (ECF No. 12-9 at 157.)  After independently

17  reviewing the record, this court concludes that it was not objectively unreasonable for the state

18  court to find that the jury could permissibly infer that petitioner had a motive or intent to commit

19  the charged offense.  Federal courts allow gang evidence to prove intent and motive to commit

20  the crime.  See, e.g., Estelle, 502 U.S. at 68-69; Noel v. Lewis, 605 F. App'x 606, 609 (9th Cir.

21  2015); Gomez v. Pliler, 212 F. App'x 687, 691 (9th Cir. 2006); Nguyen v. Runnels, 127 F. App'x

22  926, 927-28 (9th Cir. 2005); Windham v. Merkle, 163 F.3d 1092, 1103-04 (9th Cir. 1998).  At

23  trial, witnesses testified that petitioner was a member of the Norteños street gang and that the

24  victim was a member of a rival street gang called the Brown Pride Sureños.  (ECF No. 12-5 at

25  1701, 1784, 2316, 2326-35).  Both petitioner and the victim have gang-related tattoos, and

26  petitioner's tattoos on his hands and forearms, would have been visible to others, including

27  petitioner, during breaks and before and after work.  (Id. at 1703-05, 2257-61, 2312.)  Norteños

28  identify with red, and petitioner was wearing red clothing when the incident occurred.  (Id. at

1699-1702, 1804, 2036, 2335.)  On the day of the attack, the victim was wearing blue clothing, and Sureños associate with blue.  (Id. at 1700.)  Other than the gang evidence, petitioner and victim did not know each other.  (Id. at 1699-700, 2337.)  An expert witness testified that he believed the crime was gang-motivated.  (Id. at 2335.)  The trial court mitigated any chance of unfair prejudice by giving a limiting instruction to the jury that the gang evidence could only be used for deciding whether petitioner intended to kill or had motive to commit the charged offenses.  (Id. at 2548-49, 2544 ("During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."); Walters v. Maass, 45 F.3d 1355, 1357-58 (9th Cir. 1995); see also United States v. Takahashi, 205 F.3d 1161, 1165 (9th Cir. 2000); Garcia v. Robertson, 784 F. App'x 992, 994 (9th Cir. 2019).   The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

Petitioner cites two relevant cases to support his argument, but they are distinguishable. In McKinney v. Rees, 993 F.2d 1378 (9th Cir. 1993), a pre-AEDPA case, the Ninth Circuit held that the disputed evidence was irrelevant and that no permissible inferences could be drawn from it.  Here, the state court reached the opposite conclusion; the jury could permissibly infer from the gang evidence that petitioner had motive or intent to commit the charged offenses.  Second, in Kennedy v. Lockyer, 379 F.3d 1041 (9th Cir. 2004), the Ninth Circuit held that "an indigent defendant must be provided with a transcript of prior proceedings which includes, among other things, motions and the court's rulings thereon, as well as opening statements, closing arguments, jury instructions, and relevant colloquies."  Id. at 1049-50.  It found that the state court's denial of the request for a complete transcript of the first trial and its proceedings had a substantial and injurious effect on the jury's verdict.  Id. at 1054-55.  "The prosecution took advantage of [petitioner's] counsel's lack of knowledge regarding the prior trial order prohibiting gang testimony in order to introduce the prejudicial testimony in the second trial; the state conceded as much during oral argument."  Id. at 1055.  Although the Ninth Circuit stated in dicta that "the use of gang membership to imply 'guilt by association' is impermissible and prejudicial," id. at 1056, the court did not address the evidentiary challenge to the gang evidence.  Kennedy is, therefore,

13

1  not applicable to petitioner's evidentiary challenge.  This court finds no basis for habeas relief on

2  petitioner's claim that the admission of gang evidence violated his right to due process.

3  VI.  <u>Conclusion</u>

4       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

5  habeas corpus be denied.

6       These findings and recommendations are submitted to the United States District Judge

7  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

8  after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

11  he shall also address whether a certificate of appealability should issue and, if so, why, and as to

12  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

13  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

14  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

15  service of the objections.  The parties are advised that failure to file objections within the

16  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

17  F.2d 1153 (9th Cir. 1991).

18  Dated:  April 29, 2022

19

20                                          KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE

21

22  /TAA/carr0304.157

23

24

25

26

27

28

14